UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) ) | |
| v. | ) ) | Crim. No. 4:21-cr-40026-MRG |
| **MOHAMAD OCH** | ) ) ) | |
| **Defendant.** | ) ) | |

### ORDER ON RELEVANT CONDUCT PURSUANT TO DEFENDANT'S PSR OBJECTIONS #12-14

**GUZMAN, J.**

Following the Defendant's conviction at trial and in advance of pronouncing his final sentence, the Court issues this ruling regarding the consideration of relevant conduct in sentencing for Dr. Mohamad Och ("Dr. Och"). For the reasons stated below, the Court **SUSTAINS** the Defendant's objections #12 and #14 and precludes the introduction of relevant conduct related to the eleven patients referenced by the Government for sentencing and their correlating drug weight calculation.

### I. BACKGROUND

The parties are well familiar with the facts of this case, and therefore, the Court will not recite them here. Prior to this determination, the Court held two pre-sentencing hearings focused on relevant conduct, [06/17/2025 Hr'g, ECF No. 243; 06/30/2025 Hr'g, ECF No. 255] and ordered the parties to respond to a Show Cause Order on the issue. [Show Cause Order, ECF No. 244; Gov't Resp., ECF No. 253; Def. Resp., ECF No. 254]. The Court reviewed the filings submitted by the parties, including the expert reports from Dr. Candillis and Dr. Aoun. Additionally, the Court's determination is informed by all pretrial proceedings and testimony and argument at trial.

1

## II. LEGAL STANDARDS

The U.S. Sentencing Commission's *Guidelines Manual* defines relevant conduct as "the range of conduct that is relevant to determining the applicable offense level" of the defendant based on charged conduct and other relevant "real offense" factors. U.S. SENT'G GUIDELINES MANUAL §1B1.3 (U.S. SENT'G COMM'N 2024). As of November 1, 2024, §1B1.3(c) provides that "relevant conduct <u>does not</u> include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." (emphasis added). If the conduct establishes, in whole or in part, the instant offense of conviction, it <u>may</u> qualify as relevant conduct. U.S.S.G. §1B1.3(c), cmt. n.10 (emphasis added).

"For certain offenses [listed in U.S.S.G. §3D1.2(d)], the defendant may be accountable for acts that are part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. SENT'G COMM'N, Primer on Relevant Conduct 8 (2025) ("U.S.S.G. Relevant Conduct Primer"). "The term 'same course of conduct' is analytically distinct from the term 'common scheme or plan.'" <u>United States v. Vincente</u>, 909 F.3d 20, 24 (1st Cir. 2018) (quoting <u>United States v. Bryant</u>, 571 F.3d 147, 160 n.13 (1st Cir. 2009). The same course of conduct inquiry focuses on "whether the defendant repeats the same type of criminal activity over time." <u>Vincente</u>, 909 F.3d at 24 (internal quotation marks and citations omitted). When considering acts are part of a "common scheme or plan" as the offense of conviction, the Court looks to whether the "acts [are] connected together by common participants or by an overall scheme." <u>Id.</u> (internal quotation marks and citations omitted).

Offenses may "qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode,

spree, or ongoing series of offenses." U.S.S.G. §1B1.3, cmt. n.5(B)(ii). A determination of whether offenses are sufficiently connected to each other to be part of the same course of conduct is made based on the following factors: degree of similarity of offenses, regularity of the offenses, and temporal proximity. U.S.S.G. §1B1.3. A common scheme or plan occurs when two or more offenses are "substantially connected to each other by at least one common factor, such as: common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. Relevant Conduct Primer at 12; Vincente 909 F.3d at 24. At sentencing, the Government carries the burden to prove relevant conduct by the preponderance of the evidence. United States v. Walker-Couvertier, 860 F.3d 1, 17 (1st Cir. 2017)

At sentencing for a defendant convicted of a drug-trafficking offense, drug quantity plays an important role in establishing the defendant's base offense level ("BOL"), and "[d]rugs are attributed to a defendant both from the count(s) of conviction and from relevant uncharged conduct." United States v. Carlos Soto-Villar, 40 F.4th 27, 31 (1st Cir. 2022) (citations omitted); USSG §1B1.3(a)(3). "Put another way, drug quantities not included in the count(s) of conviction may still be attributed to the defendant if they were 'bound up in the acts that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" Soto-Villar, 40 F.4th at 31 (quoting United States v. Sepulveda, 15 F.3d 1161, 1197 (1st Cir. 1993)). Before the Court can include drug quantities that derive from uncharged acts as part of a defendant's guideline calculation, "the government must establish an adequate connection between the conduct and the offense(s) of conviction." Id. (citing United States v. Sklar, 920 F.2d 107, 110 (1st Cir. 1990)). Finally, the government must prove all drug quantities for sentencing, including those attributed to relevant conduct, by a preponderance of the evidence. Id.

III.   **DISCUSSION**

Dr. Och, a psychiatrist, was convicted by a jury on Counts 2s, 4s, and 6s under the Controlled Substances Act, 21 U.S.C. § 841(a)(1), for prescribing Xanax and Adderall to undercover officers. [Jury Verdict Form, ECF No. 175]. Dr. Och was acquitted of five other counts pertaining to prescriptions for real patients under 21 U.S.C. § 841(a)(1) and two counts of health care fraud under 18 U.S.C. §1347. [Id.] Counts 2s, 4s, and 6s are grouped for guideline calculation purposes because the offense level is determined "largely on the basis of the total amount of harm or loss, the substance involved, or some other measure of aggregate harm." U.S.S.G. §3D1.2(d); U.S.S.G. §2D1.1 (drug trafficking offenses).

At sentencing, the Government seeks to include the drug quantities attributable to prescriptions Dr. Och wrote for the undercover officers, which formed the basis of the Defendant's conviction, but also drug quantities for uncharged and acquitted conduct relating to Dr. Och's interactions with eleven real patients. The Government argues that Dr. Och's prescriptions to the eleven patients are relevant conduct to Dr. Och's offenses of conviction. The Defense objects to the inclusion of the eleven patients' drug weights as relevant conduct. At issue whether the patient care and prescription practices for these eleven real patients during the timeframe of the investigation is sufficiently similar to constitute "relevant conduct" pursuant to U.S.S.G. §1B1.3. The determination has great consequence for the Defendant; as calculated in the Presentence Report ("PSR") including the eleven patients, Dr. Och's BOL is 34, whereas the Defense has calculated the BOL as 14 without the eleven patients.

The Government argues that their investigation shows that the record-keeping and prescription practices for these real patients were sufficiently similar to the convicted counts to be deemed as "relevant conduct" for purposes of sentencing. [See ECF No. 253]. Therefore, the drug weight for these prescriptions must be calculated into sentencing to represent the total amount of

4

the substance involved. Defendant argues that the PSR's inclusion of both acquitted conduct and uncharged conduct is improper due to the November 2024 change in U.S.S.G. guidelines, the scope of the wrongdoing that the jury found in this case, and as a matter of proportionality for punishment related to the jury convictions made on November 17, 2023. [PSR at 27-28; See Def. Resp.]. Both parties have submitted expert reports on this topic.

The Court first considers whether Dr. Och's interactions with the eleven patients is part of the "same course of conduct" as his offenses of conviction. U.S.S.G. §1B1.3. As stated above, the Sentencing Guidelines advise the Court to analyze whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct using the factors of similarity, regularity, and temporal proximity. U.S.S.G. §1B1.3(B)(ii). The Court agrees with the Defendant that use of these three factors in the analysis is "intrinsically problematic in the context involving a psychiatrist who saw patients on a monthly basis." [Def. Resp. at 2]. These factors are unreliable indicators for relevant criminal conduct in this specific case.

First, regarding similarity, Dr. Och was a practicing psychiatrist, and it is inherent by nature of him operating an active medical office that many of his patients share similar characteristics – indeed, all struggled with mental health challenges, and all sought him out for prescription drug treatment for those issues. It is true that many of the patients who visited Dr. Och's practice sought prescriptions for the same controlled substances he was convicted of trafficking. However, as shown in the parties' filings, the eleven patients selected for relevant conduct consideration had varying, highly complex medical conditions, whereas the undercover officers presented with mild, less complex mental health concerns. [Id. at 4-5; See EXPERT FORENSIC PSYCHIATRIC REPORT OF ELIE G. AOUN, MD (May 16, 2025) ("SECOND AOUN EXPERT REPORT"), *on file with the Court*]. It is difficult to draw a line outside of the jury's verdict for the undercover interactions that delineates

5

Dr. Och's purported criminal conduct apart from his lawful and appropriate medical care. Even the Government acknowledged in its brief, "that the defendant provided many services and procedures other than those that are at the center of this case." [Gov't Resp. at 1]. During the hearing, the Government noted that it <u>does not</u> suggest that at all times relative to the review of the medical records, that Dr. Och's treatment of the real patients was criminal. [ECF No. 255] (emphasis added). The Government was unable to provide a line marking where the proper medical treatment ended, and where the criminal conduct began regarding these real patients. Further, the Court finds that the eleven patients are actually dissimilar to the undercover officers because the undercover officers were new patients to Dr. Och whereas all of the real patients had been under Dr. Och's care for multiple years, one as long as ten years. <u>See</u> SECOND AOUN EXPERT REPORT. The Court heard testimony of defense expert, Dr. Aoun, who detailed how, in practice, a doctor seeing a long-term patient may not keep as thorough notes or run every medical test available because of the continuity of care and his relationship with the patient. The Court notes that, Dr. Och's record keeping was deficient – as noted by Dr. Aoun's report—however, on its own, this does not satisfy the Government's burden of proof by the preponderance of the evidence. SECOND AOUN EXPERT REPORT at 23-25. The prescription and medical evaluation practices for the eleven patients are inherently dissimilar from interactions with undercover agents, who had a maximum of two visits with Dr. Och.

Turning to the second "same course of conduct" factor, regularity is also an unreliable indicator in this case. The Court refers here to Defendant's brief:

> Regular appointments that do not necessarily vary in substantial ways from month-to-month with patients who need ongoing care for serious psychiatric conditions are inherent in any ordinary, lawful psychiatric practice. In fact, they are actually necessary for the

6

proper monitoring of medication and treatment that must occur for the prescription to be legitimate and to be issued in the ordinary course of medical treatment.[ECF No. 254 at 2]. This is not the case of repeated drug deals on the street. That Dr. Och regularly saw the eleven patients is expected and not indicative of a pattern of criminal conduct.

Finally, for the same reasons that regularity is a misleading factor in this analysis, temporal proximity is not a strong indicator for the relevant conduct issue in this case. Repeated appointments on a month-to-month basis are an inherent trait of a psychiatric practice. Even the Supreme Court has noted that issuing illegal prescriptions under the Controlled Substances Act is "often difficult to distinguish from the gray zone of socially acceptable . . . conduct" issuing valid prescriptions. Xiulu Ruan v. United States, 597 U.S. 450, 459 (2022). In sum, the Government has not shown by a preponderance of the evidence that Dr. Och's interactions with the eleven real patients forms the same course of conduct of his offenses of conviction. .

The Court now considers whether the eleven patients are part of a "common scheme or plan" as Dr. Och's offenses of conviction. A common scheme or plan occurs when two or more offenses are "substantially connected to each other by at least one common factor, such as: common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. Relevant Conduct Primer at 12; United States v. Vincente, 909 F.3d 20, 24 (1st Cir. 2018). The Defense notes that the jury declined to convict Dr. Och for ten of the fourteen allegedly illegal prescriptions – all of which were for his real patients. Therefore, the Defense argues, "the jury refused to adopt the Government's theory that Dr. Och intended to prescribe medications to any of his actual patients outside the usual course of his professional practice and for no legitimate medical purposes." [ECF No. 254 at 5-6]. The Court agrees with this reading of the verdict. The Government was required to prove beyond a reasonable doubt at trial that Dr. Och's prescriptions

to the patients that formed the indictment were made with no legitimate medical purpose and outside the usual course of the Defendant's professional practice. See Ruan, 597 U.S. at 454. While the Government has a slightly lower burden at sentencing, relevant conduct cannot be a backdoor for conviction on the preponderance of the evidence standard.

The Court joins the Seventh Circuit in its warning that "[t]he relevant conduct provision, interpreted in an overly broad manner, has the potential of being a coarse instrument capable of causing years of serious incidental criminality to ride in at sentencing on the coattails of a relatively minor conviction." United States v. Ritsema, 31 F. 3d 559, 567 (7th Cir. 1994). The Government was unable to provide a line for where Dr. Och's proper medical treatment ended, and where the criminal conduct began regarding the elevenreal patients.  When the Government cannot delineate the line between criminal conduct and proper medical treatment, as in this case, it cues the Court to give additional vigilance to the liability enhancements applied at sentencing, especially when they correlate with the inherent traits of Dr. Och's lawful medical practice.

Lastly, proportionality in sentencing is mandated by the Eighth Amendment. U.S. Const. amend. VIII. The Supreme Court has held that the Eighth Amendment's prohibition against "cruel and unusual punishments" applies to punishments that are disproportionate to the offense. Solem v. Helm, 463 U.S. 277, 284 (1983).  At trial, the jury acquitted Dr. Och of any conduct related to his real patients or health care fraud claims. To include the drug weights for Dr. Och's eleven real patients would result in a BOL that is disproportionate to the jury conviction entered on November 17, 2023. Therefore, these patients and their correlated drug weights must be excluded from the Defendant's guideline calculation.

## IV. CONCLUSION

For the reasons stated above, the Court **SUSTAINS** the objections of Defendant and precludes the introduction of relevant conduct related to the eleven patients and their correlated drug weight calculation. Accordingly, the Court directs the Probation Department to amend, the Presentence Report prior to sentencing on July 31, 2025.

**SO ORDERED.**

Dated: July 3, 2025

                                                          /s/ Margaret R. Guzman
                                                          Margaret R. Guzman
                                                          United States District Judge